the matter can be hard on the petition for a temporary injunction and that plaintiff will be injured and will suffer irreparable damage in that any interference by Mr. Brown or those acting in concert with him in the normal operations of Trace will create a risk of imminent and irreparable harm through potential interruption of customer deliveries to hospitals or other essential facilities, loss of critical employees, failure to safeguard assets, and potential failure to dispose promptly and properly of hazardous radioactive wastes. Plaintiff has no adequate remedy at law if this harm occurs because damages cannot compensate for destruction of customer relationships or the cessation of operating status for Trace. The interests involved are unique and irreparable, so that the damages caused by this conduct and the damages which would be caused if such conduct were permitted to continue in the future may not be accurately measured in monetary terms.

Plaintiff has shown that the potential harm to the public could be great without entry of this Order. Specifically, there is a risk that radioactive would not be properly disposed of and potentially could be stolen. In addition, the employees, creditors, and customers of Trace all could be harmed without the entry of this order.

The Court finds that no bond is necessary to protect Defendant's interests because Plaintiff intends to continue to run Defendant Trace as a going concern.

Based on the foregoing findings, **IT IS THEREFORE ORDERED** that:

Defendant Brown and all persons in active concert or participation with him, and all other persons who receive actual notice of this Order shall not, either directly or indirectly, on behalf of anyone:

      (a)    interfere with the operation of the business of Trace by Mr. Crowe;

      (b)    prevent Mr. Crowe or anyone appointed by him from entering the Trace headquarters;

REC-WAV016231

(c)   damage, destroy, or tamper with any Trace property;

(d)   contact any state or federal regulator with [respect to/on behalf of] Trace without the approval of Mr. Crowe; or

(e)   interfere in any way with any license of Trace.

*Bond is $1000,00*

**IT IS FURTHER ORDERED** that Plaintiff's Application for Temporary Injunction be heard before this Court on _Oct. 1, 2008_ at _1:30 P_.m., in the courtroom of the Honorable _JAKE COLLIER_, Denton County, Texas, at which hearing Defendants Brown and Trace will personally appear to show cause why a temporary injunction as requested should not be granted, to be effective until final judgment in this suit.

The Clerk of the above-entitled Court shall forthwith issue a temporary restraining order in conformity with the law and the terms of this order.

SIGNED this 19th day of September, 2008, at _1:30 P_.m.

_____
JUDGE PRESIDING

DA1:\535624\03\BH@G03!.DOC\62657.0003

PAGE 3

# EXHIBIT 3

Filed
08 September 22 A7:48
Sherri Adelstein
District Clerk
Denton District

NO. 2008-30286-211

| | | |
|---|---|---|
| MEDICAL PROVIDER FINANCIAL CORPORATION III | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | DENTON COUNTY, TEXAS |
| DARREN BROWN and TRACEY LANE | § § § | |
| Defendants. | § § § | 211 JUDICIAL DISTRICT |

## PLAINTIFF'S AMENDED PETITION AND APPLICATION FOR EMERGENCY TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Medical Provider Financial Corporation III ("MPFC") respectfully files this, its amended petition and application for temporary injunction and permanent injunction. The application for temporary injunction and permanent injunction is supported by the Affidavit of David Mandel filed with the Court on September 19, 2008. MPFC would show as follows:

## I.  INTRODUCTION

Emergency relief is necessary to save an important local business from destruction by two disgruntled former corporate officers. Plaintiff MPFC requests the extraordinary remedy of temporary and permanent injunctive relief in order to (1) protect its contractual rights to control Trace Life Sciences, Inc. ("Trace"), (2) prevent irreparable harm to its investment in Trace through the potential destruction of the assets or business of Trace by former management of Trace who are attempting to "burn the ship" rather than peaceably turning the company over to new management, and (3) protect the public interest by preserving employment for the Trace

REC-WAV016236

workforce and ensuring the safe disposal of radioactive waste currently within the possession of

Trace but unable to be disposed of properly by Trace because of its precarious financial position.

Trace is a producer and supplier of radioactive medical isotopes for use in the

nuclear medicine industry around the country. Since November 2006, MPFC has loaned more

than $27 million to Trace through a series of contracts and amendments to those contracts.

Defendant Brown was the CEO and majority shareholder of Trace and was a guarantor and

pledgor of collateral under certain of these agreements. In connection with this lending, MPFC

entered into a pledge agreement (the "Pledge Agreement") whereby it obtained an "immediate

and irrevocable proxy to vote" the shares of Trace and effectively control its operations if an

"Event of Default" or other "Terminating Event" occurred as defined in the Credit Agreement and

related loan documents.

Trace has been unable to meet its obligations as they become due and is in a

precarious financial situation, which threatens the business from continuing as a going concern.

Because of its distressed situation, numerous Events of Default and Terminating Events have

occurred. On September 19, 2008, MPFC notified Trace that Events of Default and Terminating

Events had occurred. As a result, MPFC exercised its proxy to vote the shares of Trace and,

through a unanimous written consent of the stockholders of Trace, replaced its prior board of

directors. In addition, the board of directors terminated the employment of Defendant Brown as

CEO of Trace, removed Defendant Lane from her officer position as Vice President of Trace, and

replaced them with a new management team that consists of experienced veterans in the nuclear

medicine industry who are prepared to maintain Trace as a going concern.

Despite MPFC taking the exact actions contemplated by the Credit Agreement in

order to protect its investment in Trace, Brown, Lane and certain other employees of Trace acting

REC-WAV016237

at their direction have prevented the new management team from entering the premises of Trace and exercising their lawful right to manage the company. Moreover, when they learned of their discharge, Defendants Brown and Lane took unlawful and destructive actions to harm or destroy critical relationships of Trace with its customers, employees, and regulators. Specifically, when informed on Friday, September 19, that she had been removed from her officer position and that Defendant Brown had been discharged, Defendant Lane told all Trace employees to leave the office in the middle of the work day, told new management that she was calling all customers to cancel orders, and stated that she was directing steps to attempt to suspend the license of Trace to handle radioactive materials. Ms. Lane further stated that a production run was scheduled for the weekend but would not be performed. Ms. Lane locked herself in the Trace offices, which prevented new management from protecting records and accounts from manipulation or destruction. Further, she prevented new management from having contact with employees to reassure them about job continuity, and many of them left promptly. MPFC has filed a suit in Nevada, the jurisdiction chosen by the Pledge Agreement to resolve disputes under that agreement, in order to resolve MPFC's rights with respect to the corporation. MPFC expects a prompt resolution of this Nevada suit.

Until there is such an outcome, this Court should enjoin Brown, Lane, and anyone acting in concert with them from preventing this new management team from exercising its lawful rights to manage Trace. Without an order from this court enjoining Brown, Lane, and anyone acting in concert with them from interfering with the rightful management of Trace, there is a substantial risk that (1) Trace's property, records, reputation, and intangible assets will be destroyed by former management that would rather "burn the ship" than turn control of the

REC-WAV016238

company over to its rightful management; (2) radioactive material will not be properly disposed of; and (3) Trace will no longer be able to operate as a going concern.

MPFC thus requests that this court enter an emergency temporary injunction, with an expedited hearing schedule, to allow the management chosen by the rightful directors of Trace to enter the premise and control the facility and business of Trace. If this does not occur, there is a substantial likelihood that (1) Defendants Brown and Lane will continue the program they have begun to damage Trace's relationships with its customers, employees, and regulators, (2) the public interest could be harmed by the failure to properly dispose of the hazardous materials at Trace and (3) the rights of MPFC and Trace's employees, customers, and creditors will be irreparably harmed because Trace will no longer be a going concern.

## II.  PARTIES

1.      MPFC is a corporation organized and existing under the laws of the State of Nevada.

2.      Defendant Brown is the former CEO of Trace, which has its principal place of business in Denton County, Texas, and he is a resident of Canada.

3.      Defendant Lane is the former Vice President of Trace and a resident of Texas.

## III.  JURISDICTION & VENUE

4.      The Court has subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court. The Court has personal jurisdiction over Defendants because Defendant Brown is the former CEO and sole shareholder of Trace.

5.      Venue of this action is proper in Denton County, Texas, pursuant to Section 15.002(a)(1) and (3) of the Texas Civil Practice and Remedies Code, because all or a substantial part of the events or omissions giving rise to the claim occurred in Denton County, Texas and

REC-WAV016239

because Trace maintains its principal office in Denton County, Texas. In addition, on information and belief, Defendant Lane appears to be a resident of Denton County, Texas.

6. The Pledge Agreement provides that the courts of Nevada shall determine the rights of the parties with respect to the contract. As a result, MPFC has filed a lawsuit in Nevada to declare its rights under the Pledge Agreement and other documents associated with the lending. The Pledge Agreement contains an exception to Nevada jurisdiction and venue that states: "NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS . . . ." (Mandel Affidavit Ex. A.) Thus, consistent with the parties' agreement, this Court may enter an order to protect the collateral by preserving the business operations of Trace and to realize on the security mechanism provided by the proxy until a binding decision can be rendered by the court in Nevada.

## IV.   FACTUAL BACKGROUND

### A.   MFPC Has Loaned More than $27 Million to Trace.

7. MPFC has loaned more than $27 million to Trace through a Credit Agreement dated as of November 10, 2006 (the "Credit Agreement"), which has been amended several times due to Trace's numerous defaults under that agreement. In connection with the Credit Agreement, MPFC entered into a Pledge Agreement dated as of November 10, 2006, whereby MPFC obtained an "immediate and irrevocable proxy to vote" the shares of Trace upon an "Event of Default" under the Credit Agreement. Over the next twenty-two months, the Credit Agreement was amended several times due to, among other things, Trace's failure to make payments pursuant to that agreement and Trace's need for additional funding so that it could meet its payroll obligations.

REC-WAV016240

8. In connection with the third amendment to the Credit Agreement on May 8, 2008 (the "Third Amendment"), MPFC agreed to forbear from exercising its rights and remedies under the Credit Agreement and other loan documents until December 31, 2008 unless a "Terminating Event" or "Event of Default" under the Credit Agreement occurred.

## B.  Numerous Terminating Events and Events of Default Occurred After May 8, 2008.

9. After May 8, 2008, numerous Terminating Events and Events of Default have occurred, including that: (1) Trace has failed to operate its business in accordance with Cash Flow Projections (as defined in the third amendment) because Trace has failed to pay accounts payable and expenses in the amounts and at the times required by the Cash Flow Projections; (2) Trace does not have capital to fund continuing operations, and is insolvent, which constitutes a Material Adverse Effect under the Credit Agreement; and (3) fees to Trace's investment banker have exceeded the threshold provided for in the Third Amendment

## C.  MPFC Exercised Its Rights Under the Credit Agreement and Replaced the Directors of Trace.

10. On September 19, 2008, MPFC notified Trace of these Terminating Events and Events of Default. Acting under the proxy, MPFC has executed a series of unanimous consents of shareholders and directors of numerous entities within the Trace corporate structure. One effect of these consents is to replace all of the directors of Trace with a designee of MPFC, to replace the officers, Darren Brown and Tracey Lane, with Paul Crowe as President, and to designate Thomas Fazio as Secretary of Trace. Consequently, defendants Darren Brown and Tracey Lane have no positions as an officer or director of Trace.

11. Mr. Crowe has selected a team of experience individuals who are on site at the Trace headquarters and have assumed operational control under the direction of Mr. Crowe. If Trace is no longer able to operate as a going concern for some reason, MPFC's interest in Trace

REC-WAV016241

will be damaged significantly. Thus, MPFC has a strong incentive to continue to operate Trace as a going concern, to the benefit of its employees, creditors, customers, and the public at large. Mr. Crowe and his management team are ready and willing to operate Trace as a going concern in order to preserve the value of Trace.

**D.     Brown, Lane and Other Employees of Trace Damage the Business and Prevent New Management from Entering the Premises**

12.     Even though MPFC properly exercised its rights to exercise the proxy to vote the shares of Trace and the new directors of Trace acted within their rights to replace the management of Trace, Defendants Brown and Lane and other employees of Trace have prevented the new management from entering the premises of Trace.

13.     On September 19, 2008, Defendant Lane prevented Mr. Crowe from entering the Trace facility. She also informed Mr. Crowe that she had told all of the employees of Trace to quit. Mr. Crowe observed that all employees appeared to leave the building around noon on Friday as he arrived at the facility. She further told him that she was calling all of Trace's customers and telling them to cancel their orders. She also stated that she was directing notification to state licensing authorities that Trace's license to handle radioactive material was no longer valid. Ms. Lane retreated to the company offices, maintained physical control over the business and its operations, and refused entry to Mr. Crowe. This destructive activity has already caused irreparable harm to Trace's business and MPF, and that harm will continue and increase with each day that Trace is not operating as a going concern. This is particularly true because Trace supplies essential diagnostic medications, for which hospitals and other medical institutions must have a reliable supply. To the extent that Trace is replaced as a supplier by customers, at least some of those relationships can never be restored. To the extent Trace employees quit their jobs, operating the business is in difficulty and maintaining the license is in serious jeopardy.

REC-WAV018242

14.      On September 19, 2008, MPFC also obtained a temporary restraining order to restrain Brown or anyone acting in concert with him from interfering with Mr. Crowe's rightful operation of Trace.

## V.   APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

15.      Any interference by Brown, Lane, or those acting in concert with them in the normal operations of Trace under the direction of Mr. Crowe will create a risk of imminent and irreparable harm through potential interruption of customer deliveries to hospitals or other essential facilities, loss of critical employees, failure to safeguard assets, and potential failure to dispose promptly and properly of hazardous radioactive wastes. MPFC has no adequate remedy at law if this harm occurs because damages cannot compensate for destruction of customer relationships or the cessation of operating status for Trace.

16. MPFC seeks a preliminary injunction and permanent injunction, to protect the operations, assets, and business of Trace from interference by Brown, Lane, or those acting in concert with them until final adjudication by the Nevada court of any disputes that may exist between Mr. Brown and MPFC. This injunctive relief will be in the best interest of all the parties and the public by maintaining the safe and efficient services of an essential business in the medical field.

17.      Substantial Likelihood of Success. MPFC has a substantial likelihood of success on the merits because, as stated above, Events of Default and Terminating Events have occurred after May 8, 2008. As a result, MPFC has the right to exercise the proxy to vote the shares of Trace and replace the directors of Trace. Those new directors in turn have the authority to appoint new management. Brown and those acting in concert with him have no right or authority to prevent this new management team, appointed by the rightful directors of Trace, from entering the premises. These issues will be resolved by the Nevada court, and an injunction is essential to

REC-WAV016243

enable to new management team of Trace to preserve the assets of Trace until this issue is resolved in Nevada.

18.     <u>Substantial Threat of Immediate and Irreparable Injury.</u>  MPFC faces an immediate and irreparable injury if the Court does not enter a temporary injunction preventing Brown, Lane, and those acting in concert with them from interfering with the new management team and its operation of Trace.  First, MPFC is informed that a substantial amount of radioactive waste has been building up over the past months as the company continued to spend money sending representatives to trade shows and meetings with its investment bankers over the same period. Yet Trace lacks the funds necessary to properly dispose of this waste. Unless the management team chosen by the rightful directors of Trace is permitted to manage the company and receive additional capital from MPFC, there is a significant threat that this waste could be either stolen or improperly disposed of, potentially leading to catastrophic results to the citizens of Denton County.

19.     Second, if this waste is not properly disposed of, Trace risks losing its licenses to use and dispose of radioactive waste, most likely eliminating any chance that Trace could continue to exist as a going concern.  Since almost all of the value of Trace is as a going concern, such an outcome would result in irreparable harm to the rights of MPFC.  It also would be detrimental to Trace's employees, customers, and other creditors.

20.     Third, if the management chosen by Trace's rightful directors is not permitted to access and control the facilities at Trace, there is a substantial likelihood of damage or sabotage to the property at the Trace facility and lack of staff to maintain the business, licenses, and drug approvals.  New management must be permitted to enter the facility in order to protect the assets of Trace from such damage.

REC-WAV016244

21.    <u>Threatened Injury to MPFC Outweighs any Injury to Brown</u>.  Unless the Court enters a temporary injunction precluding Brown, Lane, and anyone acting in concert with them from interfering with the rightful management team of Trace, MPFC faces the threat of irreparable harm because Trace will no longer being operated as a going concern.  The relief MPFC requests would enable it to continue to operate Trace as a going concern.  For this reason, Brown and Lane faces no injury if this court grants a temporary injunction.

22.    <u>Public Interest Will Be Served</u>.  The public interest will be served by a grant of a temporary injunction and permanent injunction because there is a risk that a substantial amount of hazardous materials at the Trace headquarters will not be properly disposed of.  If this occurs, there is a threat to the health and safety of the citizens of Denton County.

23.    In addition, if injunctive relief is not granted there *is a substantial likelihood that* Trace will no longer be operated as a going concern, jeopardizing the jobs of current employees and the contracts and business expectations of Trace's customers and creditors.

24.    MPFC seeks injunctive relief from this Court pursuant to equitable principles, Texas Rules of Civil Procedure 680 and 681, and Texas Civil Practice and Remedies Code Section 65.011, which provides in part:

> A writ of injunction may be granted if:
>
> (1)    the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;
>
> (2)    a party *performs or is about to perform or is procuring or allowing the performance* of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;
>
> (3)    the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions;

* * *

REC-WAV016245

(5)     irreparable injury to real or personal property is threatened irrespective of any remedy at law.

(Emphasis added.)

25.     For the potential harm and damage that would be inflicted upon MPFC but for the intervention of this Court, MPFC has no adequate remedy at law. Damages will continue to and to a large degree are incalculable.

26.     The temporary injunction should provide as follows:

Defendants Brown and Lane all persons in active concert or participation with them, shall not, either directly or indirectly, on behalf of anyone:

(a)     enter the premises of Trace without the permission of Mr. Crowe or his designees;

(b)     interfere with the operation of the business of Trace by Mr. Crowe and his designees;

(c)     prevent Mr. Crowe or anyone appointed by him from entering the Trace headquarters;

(d)     damage, destroy, or tamper with any Trace property, records, computer systems, or other assets;

(e)     contact any state or federal regulator with respect to Trace or any Trace employees about Trace business without the approval of Mr. Crowe; or

(f)     interfere in any way with any license of Trace;

(g)     use or access any property of Trace, including Trace's credit cards, bank accounts, and email systems.

Further, Defendants Brown and Lane are ordered and directed to:

(h) cooperate with Mr. Crowe and with those appointed by Mr. Crowe to manage Trace;

(i) direct all Trace employees to grant Mr. Crowe or his designees access to all documents, books, records, computer systems, security control systems, and accounts necessary to carry out the business of Trace;

(j) if requested, confirm the authority of Mr. Crowe to direct police authorities to physically remove any and all persons from properties operated by Trace who fail and/or refuse to act in cooperation with the execution and enforcement of the temporary injunction order;

REC-WAV016246

27.     MPFC also seeks and is entitled to a permanent injunction pursuant to the Texas

Civil Practice and Remedies Code Section 65.011 because:

        a.     MPFC is entitled to the relief above demanded and such relief requires the
           restraint of Brown and Lane from acts that will be prejudicial to MPFC;

        b.     Brown and Lane have and are about to perform actions in violation of
           common law and contractual duties owed to MPFC;

        c.     MPFC is entitled to a writ of injunction under the principles of equity; and

        d.     Irreparable injury to MPFC's contractual rights, common law rights, and
           personal property will continue to be realized by MPFC irrespective of a
           remedy at law.

28.     MPFC therefore also requests that a permanent injunction be issued upon final

trial.

## VI.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, MPFC respectfully requests that, upon final

trial in this matter, the Court award it the following:

       (i)     a temporary injunction, as set forth above;

       (ii)    a permanent injunction, as set forth above;

       (iii)   such other and further relief, at law or in equity, to which MPFC may be justly
           entitled.

Respectfully submitted,

REC-WAV016247

Michael Whitten
State Bar No. 21392000

THE WHITTEN LAW FIRM, P.C.
218 N. Elm
Denton, TX 76201-4108
(940) 383-1618 (Telephone)
(940) 898-0196 (Facsimile)

Ralph I. Miller
State Bar No. 14105800
Robert S. Velevis
State Bar No. 24047032

WEIL, GOTSHAL & MANGES LLP
100 Crescent Court, Suite 1300
Dallas, Texas 75201-6950
(214) 746-7700 (Telephone)
(214) 746-7777 (Facsimile)

**ATTORNEYS FOR MEDICAL PROVIDER
FINANCIAL CORPORATION, III**

REC-WAV016248

# EXHIBIT 4

(page 1 of 1)

**MEDICAL PROVIDER FINANCIAL CORPORATION III**
**WORKSHEET**
**CALCULATION AND COMPUTATION**
**OF NET COLLATERAL COVERAGE RATIO**
as of: July 31, 2005

Doc #: 207
ACS Key: MPFCIII
Date: 7/31/05
Note: Net collateral Coverage Ratio

## CASH AND RECEIVABLES

| | | |
|---|---|---|
| EXPECTED NET RECEIVABLE OF ALL ELIGIBLE RECEIVABLES OWNED | $ | 0.00 |
| ALL OTHER RECEIVABLES, SUPPORTING RECEIVABLES | | 0.00 |
| NON-RECEIVABLE ASSETS | | 0.00 |
| TRUSTEE ACCOUNTS AT WELLS FARGO BANK | | 740,301.00 |
| SUBSCRIPTION ACCOUNT AT WELLS FARGO BANK | | 1,249,699.00 |
| LOCKBOX ACCOUNTS IN TRANSIT TO TRUSTEE ACCOUNTS | | 0.00 |
| **TOTAL CASH AND RECEIVABLES** | **$** | **1,990,000.00** |

## LIABILITIES

| | | |
|---|---|---|
| BALANCE OF NOTES PAYABLE ISSUED | $ | 995,000.00 |
| INTEREST DUE OF NEXT INTEREST PAYMENT DATE | | 0.00 |
| TRUSTEE FEES ACCRUED (Next Period) | | 0.00 |
| LOCKBOX BANK FEES ACCRUED | | 0.00 |
| SERVICING COMPANY FEES ACCRUED | | 0.00 |
| LESS AMOUNT OF PRINCIPAL DUE WITHIN 30 DAYS | | 0.00 |
| **TOTAL LIABILITIES** | **$** | **995,000.00** |

| | | |
|---|---|---|
| **COLLATERAL RATIO (CASH & RECEIVABLES/LIABILITIES)** | | **200.00** |

| | | |
|---|---|---|
| TOTAL CASH AND RECEIVABLES | $ | 1,990,000.00 |
| REQUIRED CASH AND RECEIVABLES | | 995,000.00 |
| MAXIMUM AMOUNT OF ADMINISTRATOR'S FEE DUE | $ | 995,000.00 |

Collateral Coverage Requirement (100%) met: Yes

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1  of  3)

**MEDICAL PROVIDER FINANCIAL CORPORATION III**
**WORKSHEET**
**CALCULATION AND COMPUTATION**
**OF NET COLLATERAL COVERAGE RATIO**
as of: November 30, 2006

Doc #: _307_
ACS Key: _MPFCIII_
Date: _12/20_

## CASH AND RECEIVABLES

| | | |
|---|---|---:|
| EXPECTED NET RECEIVABLE OF ALL ELIGIBLE RECEIVABLES OWNED | $ | 110,362,990.00 |
| ALL OTHER RECEIVABLES, SUPPORTING RECEIVABLES................................. | | 0.00 |
| NON-RECEIVABLE ASSETS ............................................................................ | | 139,098,301.16 |
| TRUSTEE ACCOUNTS AT WELLS FARGO BANK.......................................... | | 25,788,189.94 |
| SUBSCRIPTION ACCOUNT AT WELLS FARGO BANK................................. | | 1.00 |
| LOCKBOX ACCOUNTS IN TRANSIT TO TRUSTEE ACCOUNTS................. | | 20,730.16 |
| **TOTAL CASH AND RECEIVABLES**........................................... | **$** | **275,270,212.26** |

## LIABILITIES

| | | |
|---|---|---:|
| BALANCE OF NOTES PAYABLE ISSUED........................................................ | $ | 241,714,000.00 |
| INTEREST DUE OF NEXT INTEREST PAYMENT DATE ............................... | | 1,394,055.52 |
| TRUSTEE FEES ACCRUED (Next Period)....................................................... | | 1,666.66 |
| LOCKBOX BANK FEES ACCRUED............................................................... | | 9,000.00 |
| SERVICING COMPANY FEES ACCRUED...................................................... | | 20,469.00 |
| LESS AMOUNT OF PRINCIPAL DUE WITHIN 30 DAYS............................... | | -3,679,000.00 |
| **TOTAL LIABILITIES**......................................................... | **$** | **239,460,191.18** |

| | | |
|---|---|---:|
| **COLLATERAL RATIO (CASH & RECEIVABLES/LIABILITIES)** | | **114.95%** |

| | | |
|---|---|---:|
| TOTAL CASH AND RECEIVABLES......................................................... | $ | 275,270,212.26 |
| REQUIRED CASH AND RECEIVABLES.................................................... | | 239,460,191.18 |
| MAXIMUM AMOUNT OF ADMINISTRATOR'S FEE DUE ............................... | $ | 35,810,021.08 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000065412

**MEDICAL PROVIDER FINANCIAL CORPORATION III-SERIES I**
**WORKSHEET**
**CALCULATION AND COMPUTATION**
**OF NET COLLATERAL COVERAGE RATIO**
as of:   October 31, 2007

Doc #: _____ 207

ACS Key: _MPFCIII_

Date: _10/31/07_

NOTE: Net Collateral Coverage Ratio - Series I

## CASH AND RECEIVABLES

| | | |
|---|---|---|
| EXPECTED NET RECEIVABLE  OF ALL ELIGIBLE RECEIVABLES OWNED... | $ | 18,862,042.84 |
| ALL OTHER RECEIVABLES, SUPPORTING RECEIVABLES................................. | | 152,573,851.73 |
| NON-RECEIVABLE ASSETS ................................................................. | | 44,140,670.43 |
| TRUSTEE  ACCOUNTS AT WELLS FARGO BANK................................... | | 359,710.67 |
| SUBSCRIPTION ACCOUNT AT WELLS FARGO BANK................................ | | 0.00 |
| LOCKBOX ACCOUNTS IN TRANSIT TO TRUSTEE ACCOUNTS.................... | | 634,385.09 |
| | | |
| **TOTAL CASH AND RECEIVABLES................................................** | $ | 216,570,660.76 |

## LIABILITIES

| | | |
|---|---|---|
| BALANCE OF NOTES PAYABLE ISSUED................................................ | $ | 170,405,000.00 |
| INTEREST DUE OF NEXT INTEREST PAYMENT DATE ............................. | | 963,389.07 |
| TRUSTEE  FEES ACCRUED (Next Period)................................................ | | 1,666.86 |
| LOCKBOX  BANK FEES ACCRUED.......................................................... | | 4,200.00 |
| SERVICING COMPANY FEES ACCRUED.................................................. | | 1,200.00 |
| LESS AMOUNT OF PRINCIPAL DUE WITHIN 30 DAYS.............................. | | (15,041,000.00) |
| | | |
| **TOTAL LIABILITIES......................................................................** | $ | 156,334,455.73 |
| | | |
| **COLLATERAL RATIO (CASH & RECEIVABLES/LIABILITIES)** | | **138.53%** |

| | | |
|---|---|---|
| TOTAL CASH AND RECEIVABLES........................................................ | $ | 216,570,660.76 |
| REQUIRED CASH AND RECEIVABLES................................................... | | 156,334,455.73 |
| MAXIMUM AMOUNT OF ADMINISTRATOR'S FEE DUE ................................. | $ | 60,236,205.03 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

(Page 1 of 1)

## MEDICAL PROVIDER FINANCIAL CORPORATION III-SERIES I
### WORKSHEET
### CALCULATION AND COMPUTATION
### OF NET COLLATERAL COVERAGE RATIO
as of:  February 29, 2008

*Doc #: 207*
*ACS Key: MPFCIII*
*Date: 2/29/08*
*Note: Net collateral coverage ratio - Series I*

### CASH AND RECEIVABLES

| | | |
|---|---|---:|
| EXPECTED NET RECEIVABLE OF ALL ELIGIBLE RECEIVABLES OWNED... | $ | 7,496,194.74 |
| ALL OTHER RECEIVABLES, SUPPORTING RECEIVABLES............................ | | 127,838,113.42 |
| NON-RECEIVABLE ASSETS .................................................. | | 25,097,110.32 |
| TRUSTEE ACCOUNTS AT WELLS FARGO BANK...................................... | | 1,089,133.71 |
| SUBSCRIPTION ACCOUNT AT WELLS FARGO BANK................................. | | 0.00 |
| LOCKBOX ACCOUNTS IN TRANSIT TO TRUSTEE ACCOUNTS.................... | | 683,015.70 |
| | | |
| TOTAL CASH AND RECEIVABLES........................................ | $ | 162,203,567.89 |

### LIABILITIES

| | | |
|---|---|---:|
| BALANCE OF NOTES PAYABLE ISSUED.................................... | $ | 118,517,000.00 |
| INTEREST DUE OF NEXT INTEREST PAYMENT DATE ...................... | | 638,916.95 |
| TRUSTEE FEES ACCRUED (Next Period)............................... | | 833.33 |
| LOCKBOX BANK FEES ACCRUED........................................ | | 4,200.00 |
| SERVICING COMPANY FEES ACCRUED.................................. | | 10,697.00 |
| LESS AMOUNT OF PRINCIPAL DUE WITHIN 30 DAYS..................... | | (16,331,000.00) |
| | | |
| TOTAL LIABILITIES.................................................. | $ | 102,840,647.28 |
| | | |
| COLLATERAL RATIO (CASH & RECEIVABLES/LIABILITIES) | | 157.72% |

| | | |
|---|---|---:|
| TOTAL CASH AND RECEIVABLES....................................... | $ | 162,203,567.89 |
| REQUIRED CASH AND RECEIVABLES.................................. | | 102,840,647.28 |
| MAXIMUM AMOUNT OF ADMINISTRATOR'S FEE DUE ............................ | $ | 59,362,920.61 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 5

**MEDICAL PROVIDER FINANCIAL CORPORATION III-SERIES I**
**WORKSHEET**
**CALCULATION AND COMPUTATION**
**OF NET COLLATERAL COVERAGE RATIO**
as of:  April 30, 2009

### CASH AND RECEIVABLES

| | | |
|---|---|---:|
| EXPECTED NET RECEIVABLE OF ALL ELIGIBLE RECEIVABLES OWNED, ALL OTHER RECEIVABLES, SUPPORTING RECEIVABLES, ALL REAL AND PERSONAL PROPERTY................ ...................................................... | $ | 82,020,824.96 |
| TRUSTEE ACCOUNTS AT WELLS FARGO BANK.......................................... | | 16,100.23 |
| SUBSCRIPTION ACCOUNT AT WELLS FARGO BANK................................... | | 0.00 |
| LOCKBOX ACCOUNTS IN TRANSIT TO TRUSTEE ACCOUNTS.................... | | 0.00 |
| **TOTAL CASH AND RECEIVABLES.............................................** | $ | **82,036,925.19** |

### LIABILITIES

| | | |
|---|---|---:|
| BALANCE OF NOTES PAYABLE ISSUED........................................ | $ | 26,513,000.00 |
| INTEREST DUE OF NEXT INTEREST PAYMENT DATE ..................................... | | 188,547.22 |
| TRUSTEE FEES ACCRUED (Next Period)........................................... | | 833.33 |
| LOCKBOX BANK FEES ACCRUED............................................. | | 600.00 |
| SERVICING COMPANY FEES ACCRUED........................................... | | 200.00 |
| **TOTAL LIABILITIES....................................................** | $ | **26,703,180.55** |

| | | |
|---|---|---:|
| **COLLATERAL RATIO (CASH & RECEIVABLES/LIABILITIES)** | | **307.22%** |

| | | |
|---|---|---:|
| TOTAL CASH AND RECEIVABLES............................................... | $ | 82,036,925.19 |
| REQUIRED CASH AND RECEIVABLES................................................................ | | 26,703,180.55 |
| MAXIMUM AMOUNT OF ADMINISTRATOR'S FEE DUE ................................ | $ | 55,333,744.64 |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CTM002476

**EXHIBIT 6**

## Medical Provider Financial Corp. V   Series I
*Funding the Purchase of Receivables Payments*

**Authorized Signers**

Joseph Lampariello
President

Allan Meister
Chief Finance Officer

Sidney M. Field
Chief Executive Officer

**Funding**
| | |
|---|---|
| Code: | 228 |
| ACS Key: | MPFCV |
| Account #: | 225430 |
| Payment Date: | 04/17/2009 |

| | | |
|---|---|---|
| Available Funds: | $ | 163,697.88 |
| Funds Disbursed: | $ | 160,000.00 |
| Difference: | $ | 3,697.88 |

Today's Date: 04/17/2009
Payment Date: 04/17/2009
Actual Payment Date: 04/17/2009

Uninvested on 04/17/2009 ... 2254.3000 ... (160,000.00)   Sweep Sold ✓

Sweep Vehicle: VP4530003

**Series V**

| Wire | Debit | 22543000 | | $ | 160,000.00 | 84875 |
|---|---|---|---|---|---|---|

Bank: Wells Fargo Bank, NA
ABA: Redacted
Acct Name: Integrated Healthcare Holdings, Inc.
DDA: Redacted
Re: MPFC V

Record Code: mpfcv3
Repeat Code: mpfcv3

Originated:
Co-Signed:

MPFC  V Payment

Page 1 of 1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CTM064178