| | |
|---|---|
| From: | Judi Begley[JudiB@medicalcapital.com] |
| Sent: | Tuesday, July 22, 2008 01:45:10 PM |
| To: | Zimmerman, Cheryl C (CTS) |
| CC: | frederick.morris@mac.com; Joey Lampariello[JoeyL@medicalcapital.com], Tom Fazio [TomF@medicalcapital.com]; Walker, Elizabeth |
| Subject: | RE: Compliance Items for MPFC V |
| Attachments: | MPFC V - UCC schedule 2007-12-31 NON AR.xls |

Hi Cheryl,

Attached is Tickler #322374 - UCC collateral report Non-Receivable Asset) for 12/31/07. Please review the item and let me know if you have any questions or problems.

Thank you,
Judi

>>> <Cheryl.C.Zimmerman@wellsfargo.com> 07/22/08 11:36 am >>>
Judi:

I have reviewed the attached compliance items and the outstanding compliance ticklers have been released with the exception of Tickler #322374 - UCC collateral report Non-Receivable Asset) for 12/31/07 due 1/15/08. This item was not provided. Please see my previous email below that was sent on July 12, 2008 regarding this item. I am attaching the non-receivable collateral listing that was submitted for the quarter ending 3/31/08 for your reference on what needs to be submitted for the quarter ending 12/31/07.

An Event of Default will occur under Note Agreement on July 24, 2008 if the Debtor fails to cure the defaults resulting from its failure to observe or perform its agreement pursuant the sections referenced in the default notice dated June 24, 2008.

Cheryl Zimmerman, CCTS
Vice President
Wells Fargo Bank, N.A.
Asset Backed Securities Division
6th & Marquette
MAC: N9311-161
Minneapolis, MN 55479

(612) 667-5069 Telephone
(612) 667-3464 Fax
cheryl.c.zimmerman@wellsfargo.com

-----Original Message-----
From: Judi Begley [mailto:JudiB@medicalcapital.com]
Sent: Wednesday, July 16, 2008 5:37 PM
To: Zimmerman, Cheryl C (CTS)
Cc: frederick.morris@mac.com; Joey Lampariello; Tom Fazio; Walker, Elizabeth
Subject: RE: Compliance Items for MPFC V

Hi Cheryl,

Attached are the compliance items for MPFC V:

Tickler # 322377 -- Collateral Valuation
Tickler # 322374 -- the Cert for UCC Report Non-Receivable Asset for 12/31/07

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000071224

Also attached is the UCC report for Non-Receivable Asset report for 12/31/07

Please review the items and let me know if you have any questions or problems.

Can you please send me an e-mail confirming you received the e-mail?

Thank you,
Judi

>>> <Cheryl.C.Zimmerman@wellsfargo.com> 07/12/08 6:58 am >>>
Judi:

I have reviewed the attached compliance items and the outstanding compliance ticklers have been released with the exception of Tickler #322377 - Collateral Valuation report due 1/31/08 and the UCC collateral report(Non-Receivable Asset) for 12/31/07 due 1/15/08).

Please provide an explanation why you did not provide a collateral listing of Non-Receivable Assets pledged to the Trustee and each relating UCC-1 financing statement showing the Trustee as secured party, filing location, filing number and date of filing and Debtor's name (see Section 3.05(g) for complete details) as of 12/31/07? On December 10, 2007, you provided Wells Fargo a PDF file (Exhibit A-2 - Non-Receivable Asset Acquisition Certificate) for a transfer of Non Receivable Asset for Integrative Medical Management to MPFC V from MPFC II. On December 10, 2007, Wells Fargo released funds from the Trust Account to acquire the Non-Receivable Asset. In addition, the Debtor has not yet delivered to the Trustee the Promissory Note and Security Agreement together with duly executed instruments of transfer or assignment as identified in the Opinion of Counsel and such other original documents relating to the Collateral, possession of which are necessary to perfect the security interest of the Trustee in the Collateral under the Note Agreement, all as described in the Certificate (Exhibit A-2)

The only outstanding items under the default notice dated June 24, 2008, for MPFCV are the delivery of the Collateral Valuation (tickler 322377 due 1/31/08) and the Cert for UCC Report (Non-Receivable Asset for 12/31/07 (tickler 322374 due 1/15/08).

An Event of Default will occur under Note Agreement on July 24, 2008 if the Debtor fails to cure the defaults resulting from its failure to observe or perform its agreement pursuant the sections referenced in the default notice dated June 24, 2008.

Cheryl Zimmerman, CCTS
Vice President
Wells Fargo Bank, N.A.
Asset Backed Securities Division
6th & Marquette
MAC: N9311-161
Minneapolis, MN 55479

(612) 667-5069 Telephone
(612) 667-3464 Fax
cheryl.c.zimmerman@wellsfargo.com

-----Original Message-----
From: Judi Begley [mailto:JudiB@medicalcapital.com]
Sent: Friday, July 11, 2008 5:01 PM
To: Zimmerman, Cheryl C (CTS)
Cc: Frederick Morris; Joey Lampariello; Tom Fazio
Subject: Compliance Items for MPFC V

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000071225

Hi Cheryl,

Attached are the compliance items for MPFC V

Tickler # 322374 -- UCC report for 12/31/07
Tickler # 322375-- Cert for UCC Report for 12/31/07
Tickler # 322374 -- UCC report for 3/31/08
Tickler # 322375 -- Cert for UCC Report for 3/31/08
Tickler # 322376 -- Collateral Report for 3/31/08
Tickler # 322376 -- Collateral Report for 4/30/08
Tickler # 322384 -- Authorized signors

Also the collateral report for 5/31/08

I am working on Tickler # 322377-- Collateral valuation report. I will keep you posted on the status.

Please review the items and let me know if you have any questions or problems.
Can you please send me an e-mail confirming you received the e-mail?

Thank you,
Judi

Confidentiality Notice: This communication, and any files attached, contains confidential information that may be privileged. The information is intended only for the use of the individual(s) or entity to which it is addressed. If you are not the intended recipient, any disclosure, distribution or the taking of any action in reliance upon this communication is prohibited and may be unlawful.

Confidentiality Notice: This communication, and any files attached, contains confidential information that may be privileged. The information is intended only for the use of the individual(s) or entity to which it is addressed. If you are not the intended recipient, any disclosure, distribution or the taking of any action in reliance upon this communication is prohibited and may be unlawful.

Confidentiality Notice: This communication, and any files attached, contains confidential information that may be privileged. The information is intended only for the use of the individual(s) or entity to which it is addressed. If you are not the intended recipient, any disclosure, distribution or the taking of any action in reliance upon this communication is prohibited and may be unlawful.

# EXHIBIT 9

**C.T. MOFFITT & COMPANY**

## MEMORANDUM NO.5                                          CONFIDENTIAL

**TO:**   Elizabeth Walker/Wells Fargo Bank

**FROM:** Chuck Moffitt/C.T. Moffitt & Company

**DATE:** June 23, 2009

**RE:**   *Examination of MPFC III on behalf of Wells Fargo Bank, NA, as Trustee*
          **Observations on Asset Validation and Recommendations on MPFC II by Signature Advisors and Waverton Group dated April 17, 2009**

We have read the 47 page Executive Summary of the Asset Validation and Recommendations for MPFC II submitted by Signature Advisors and the Waverton Group. I have in addition reviewed a major portion of the 1800+ pages of documents supporting the Executive Summary. Herewith are a few comments on both.

- The report is extremely disjointed: Whole parts of the Executive Summary and appendices are simple repetitions of pages that went before. (See pages 10 and 46, for example.) There is no table of contents to the 1800 pages of documents, rendering it impossible to find any one document without literally hours of digging.

- The table of contents of the Executive Summary says that biographies of the writers are contained in the text. In fact, only the biography of Richard Block can be found, and in a different location than the table says it is. There is no biography of David Rentz of Signature Advisors. This writer has visited the office of Signature Capital, which is a small (approximately 500 sq. ft.) office in a shopping center located in a far suburb of Los Angeles. There are several investment-related LLC names on the door (i.e.,"Personal Lenders LLC") but not the name of Signature Advisors. Signature Capital is a broker

137 S. Bedford Drive Beverly Hills, CA. 90212 • Ph: 310.556.0340 • Fax: 310.550.0937 • www.ctmoffitt.com

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    CTM002511

dealer registered with the NASD and, we believe, may be one of the broker deals involved in raising money for the MPFC funds.

- The report's Executive Summary is full of contentions backed up neither by the text of the summary nor by the documents that follow. For example, P.7 of the summary says that "the single most significant factor we found was the relatively high value to loan ratio of the Assets as determined by independent third parties." In fact, the documents that follow appear to contain appraisals of only three of the eight properties that are the subject of the loans.

- The report reaches a number of conclusions about the intentions of the Trustee (Bank of New York Mellon) that are little more that speculation. They include the following assertion: That "the Trustee's outside counsel will assume control of the...(loans)...and engage expensive valuation consultants to lay the foundation for a rapid liquidation of the Assets". This contention ignores the myriad of other possibilities open to the Trustee, including the most obvious -- a consensual workout in cooperation with Medical Capital.

- The report follows the assertion above with the bizarre contention (p.42) that "the Trustee's counsel will advise the Trustee that it cannot allow Medical Capital to manage the business of MPII, <u>even if it is to the benefit of the Noteholders</u>". In fact, the Trustee's sole responsibility is to protect the interest of Noteholders and all actions taken by the Trustee must be directed to that end.

- Further, the report states (p.43) that the Trustee's counsel may have a conflict of interest between the Noteholders and Trustee. In fact, since the Trustee's sole responsibility is protection of the Noteholders, it is almost impossible to fathom a circumstance in which the interest of the Trustee and Noteholders would ever come into conflict.

- Above all, the Conclusions and Recommendations pay no heed to the fact that the MPFC II loans are in default and that it is the Trustee's responsibility to protect the Noteholders from the poor performance or malfeasance of Medical Capital. The report contends absurdly that Medical Capital should continue working with the Trustee only "so long as it cooperates fully with the Management of MPII", disregarding that the Trustee's responsibility is to protect the interest of the Noteholders, which may in fact require that it withdraw its cooperation if Noteholder interests are in jeopardy.

- The report contends (p.43) that the job of managing defaults "is properly the business of companies like Medical Capital and the experts they hire". In fact, if Medical Capital has proven incapable of managing the defaults, it is the Trustee's responsibility to substitute its judgment for that of Medical Capital and, for the benefit of the Noteholders, to retain experts other than those engaged and controlled by Medical Capital.

###

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CTM002513

# EXHIBIT 10

| | |
|---|---|
| From: | David Rentz |
| To: | Richard Block |
| Subject: | FW: Medical Capital Note Default - M&A Update |
| Date: | Thursday, April 30, 2009 7:15:45 PM |
| Attachments: | MPFC III - Note and Security Agreement Analysis (00040007).DOC |
| | mpii ballot.pdf |
| | 04 09 09 revised morning letter to med cap 2.pdf |

**From:** Joanne Balok [mailto:Joanne@mickandassociates.com]
**Sent:** Thursday, April 30, 2009 3:47 PM
**Subject:** Medical Capital Note Default - M&A Update

Dear broker-dealer clients:

In the past week you received a letter and ballot from Medical Capital concerning Medical Capital's default under the MPFC II promissory notes. Medical Capital held a call for all interested broker-dealers and registered representatives, which frankly was another attempt at getting you and your investors to blindly follow another round of broken promises. The consultant hired by Medical Capital produced a report reflecting bad grammar and bad valuation analyses. For example, the consultant values the aggregate real estate portfolio at no impairment whatsoever, even though a component of that portfolio which allegedly supported a $23 million dollar loan is actually worth $16 million (maybe). We find out today that Medical Capital in fact turned down a $15 million cash offer for Castle Hill.

In short, as they say at the Pine Ridge Indian Reservation in nearby South Dakota, Medical Capital "speaks with forked tongue." Medical Capital states on one hand that your clients' collateral is very safe at 200% coverage but at the same time the collateral is at risk. The only element of risk is Medical Capital's desire to make more money. Medical Capital is complaining that the Trustee, the Bank of New York Mellon, has hired a very expensive consultant and a top tier law firm that is padding timesheets and costing investors "hundreds of thousands of dollars." Let's make this perfectly clear. Notwithstanding the serious flaws in the Note Issuance and Security Agreement, which we pointed out to our committed broker-dealer clients 3-4 years ago and which analysis is attached hereto, the Trustee is finally taking the action it should, ie assessing the collateral and taking the appropriate steps to exercise remedies for your client noteholders as Medical Capital is in default. Medical Capital is ultimately paying the price in equity devaluation until the aggregate collateral is worth less than approximately $90 million owed noteholders, and they don't like it.

Don't believe Medical Capital's protestations that the Trustee is jeopardizing the operations of these medical facilities and that they will go dark. I laid out a scenario on that conference call that was undisputed – a reasonably simple workout that could result in an upside return for investors. Eliminate Medical Capital's interests, do a capitalized triple net lease to the user, and give the user an option to buy the facilities in 2-3 years at a number less than the current amount owed on its obligations to MPFC II (but greater than the aggregate amount now owed to your noteholder clients). Even if the collateral pool is impaired by 35-40%, investor principal and accrued interest is protected. Again, that workout scenario would involve Medical Capital foregoing further profit, which it is trying to protect to the detriment of your clients with ballot Option B.

REC-WAV083720

Ballot Option B is Medical Capital's last attempt to further dilute an already flawed Note Issuance and Security Agreement and fully gut the third-party fiduciary responsibilities to your clients. Medical Capital entices your investors with promises to advance costs so that it can appoint a "friendly" Trustee. If Medical Capital is truly concerned about the interests of noteholders versus their own continuing profit motivation, let's appoint you, me or Pedro for President to save fees (Medical Capital also wants your clients to vote to remove the minimum asset requirement for Trustee qualification) but not allow Medical Capital to control the outcome.

I suggested that Option B be accompanied by an agreement to accrue or pay a higher level of default interest to your clients, accompanied by a partial recourse personal guarantee by Mr. Lampariello and Mr. Field, limited to $10 million exposure. The Medical Capital folks and consultant (remember, he's the one hired by Medical Capital to advise you to allow Medical Capital to fire the party that is exercising the remedies it should against a defaulted borrower) laughed that off, but if Medical Capital wants to usurp any power your clients have left to protect their interests and preserve the possibility of Medical Capital reaping a substantial profit after defaulting on its obligations to your clients (in addition to the tens and tens of millions of dollars stripped off monthly over the last several years as the "Administrative Services Fee"), that compromise seems quite reasonable.

At the risk of sounding pompous, one of the major risk factors that we identified and led to our advice to broker-dealers to wind down and reduce exposure to the Medical Capital offerings several years ago, that of Medical Capital moving beyond its medical receivables business and becoming a hard money special purpose asset real estate lender, has directly resulted in this current malaise. Credit market excuses aside, your clients would have received their principal and interest back some time ago but for Medical Capital's fateful experiment outside its core competency. Don't allow your clients to compound the problem by removing the last real impediment to Medical Capital's goal of directing, rather than answering to, the Trustee. I can't give legal advice to your clients but I would seriously consider Option A, the status quo, unless Medical Capital wants to enhance its Option B structure as highlighted above.

Sincerely,


Bryan S. Mick, Esq.
MICK & ASSOCIATES, P.C., LLO
11422 Miracle Hills Drive, Suite 401
Omaha, Nebraska 68154
(402) 504-3950 Direct
(402) 504-1710 Main
(402) 880-4960 Cell
(402) 504-3951 Fax
bryan@mickandassociates.com Email
mickandassociates.com Website

This communication, along with any attachments, is covered by federal and state law governing electronic communications and may contain confidential and legally privileged information. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is strictly prohibited. If you have received this in error, please reply immediately to the sender and delete this message. Thank you.

Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any

REC-WAV083721

# EXHIBIT 11

## Zimmerman, Cheryl C (CTS)

**From:** Zimmerman, Cheryl C (CTS)
**Sent:** Monday, March 23, 2009 10:45 AM
**To:** Judi Begley; Joseph Lampariello; Tom Fazio
**Cc:** Walker, Elizabeth
**Subject:** FW: Outstanding Compliance

**Importance:** High

      

MP 5 - cert ltr for year ended..   Annual Servicer Certification ...   Annual Certification MPFC V 20...   MP V admin 009-01-31.pdf (4 K.   MP III-SII admin 2009-01-31.pd...   MP III-SI admin 2009-01-31.pdf...   cert ltr for year ended Non Ar...

     

MPFC III - SERIES I - Non AR B...   MPFC V - Non AR Balance vs Val...   Annual Servicer Certification ...   Annual Certification MPFC3 200...   MP3S2 - cert ltr for year ende...   MPFC III - SERIES II - Non AR ...

Judi, Joey and Tom:

We have reviewed the attached compliance items. There are some compliance items that were furnished to us prior to the current situation for which they were accepted. However, given the current issues, it is necessary for a stricter adherence to the requirements of the Note Issuance and Security Agreements. The compliance items that need to have a stricter adherence are as follows:

1. Net Collateral Coverage Ratio - Section 3.05(h)

The Net Collateral Coverage Ratio calculation also needs to include a written certification signed by an authorized officer of the Debtor to the Trustee certifying that the Net Collateral Coverage Ratio calculation has been prepared in accordance with the Note Issuance and Security Agreement dated as of [recital details of the Note Agreement] and that the Collateral Coverage Requirement is satisfied as of the last day of the month prior to the date of such certificate and there is no Collateral Coverage Default. This applies to MPFCIII Series I and Series II and MPFCV.

2. Annual Statement as to Compliance (Servicer)

The Annual Statement as to Compliance delivered pursuant to Section 5.04 of the Master Service Agreement is not consistent with the requirements in Section 5.05 of the Note Issuance and Security Agreement (the Note Agreement). The Servicer's Annual Statement as to Compliance delivered should also include the statements in (i) and (ii) in the second paragraph of Section 5.05 of the Note Agreement. Please add these statements to the certificate. This applies to MPFCIII and MPFCV.

3. Annual Statement as to Compliance (Debtor)

The Annual Statement as to Compliance of the Debtor needs to state whether or not to the knowledge of the signers whether the Debtor is in compliance with all conditions and covenants of the Note Agreement and, in the event of any noncompliance, specifying such noncompliance and the nature and status of which the signers may have knowledge. Number 1 in the Debtor's Annual Statement as to Compliance needs to specify all the Debtor's noncompliance with the conditions and covenants with the Note Agreement and not just state "except as may have been previously disclosed to the Trustee." This applies to MPFCIII at this time. We also did not receive the Annual Statement as to Compliance on MPFCIII Series II.

An Event of Default will occur on March 27, 2009 as stated in the default notice dated February 25, 2009, if the requested changes are not made to the certificate delivered to the Trustee in number 3 above. Since we have accepted the form of certificates in number 1 and 2 in the past, we are also requesting the changes in 1 and 2 be made no later than

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000071658

later than March 31, 2009.

If you have any questions, please feel free to contact me.




Cheryl Zimmerman, CCTS
Vice President
Wells Fargo Bank, N.A.
Asset Backed Securities Division
MAC: N9311-161
Sixth Street & Marquette Avenue
Minneapolis, MN 55479

(612) 667-5069 Telephone
(612) 667-3464 Fax
cheryl.c.zimmerman@wellsfargo.com

-----Original Message-----
From: Judi Begley [mailto:JudiB@medicalcapital.com]
Sent: Wednesday, February 25, 2009 3:59 PM
To: Joey Lampariello; Tom Fazio; Walker, Elizabeth
Cc: Zimmerman, Cheryl C (CTS)
Subject: Re: Outstanding Compliance

Hi Elizabeth,

Attached the Outstanding Compliance Items for MPFC III-Series I, MPFC III-Series II and MPFC V. Please let me know if you have any questions.

Thank you,
Judi

>>> <Elizabeth.Walker@wellsfargo.com> 02/25/09 1:39 PM >>>
Please see the attached Demand Notices.



Elizabeth Walker

Vice President

Corporate Trust Services

Wells Fargo Bank, NA

MAC N9311-161

625 Marquette Ave

Minneapolis MN 55479

Fax: 612.667.3464

Phone: 612.316.2213



--
This message was scanned by BSVA and is believed to be clean. Click here to report this message as spam.
http://mccgateway.medicalcapital.com/cgi-bin/learn-msg.cgi?id=DE2FE28F25.57EDE

2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000071659

Confidentiality Notice: This communication, and any files attached, contains confidential information that may be privileged. The information is intended only for the use of the individual(s) or entity to which it is addressed. If you are not the intended recipient, any disclosure, distribution or the taking of any action in reliance upon this communication is prohibited and may be unlawful.

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER            WF_MAS_000071660

# EXHIBIT 12

| | |
|---|---|
| From: | LPayne@payneff.com |
| Sent: | Thursday, July 23, 2009 09:59:24 AM |
| To: | Walker, Elizabeth (CTS) |
| CC: | Zimmerman, Cheryl C (CTS); aharvey@ctmoffitt.com; ctmoffitt@ctmoffitt.com; edwardlyons@cox.net |
| Subject: | RE: List of Approved Payors |

Elizabeth –

I can see the payors listed, but so far have not found any certificates as required by the NISA or indications that the due diligence described in the PPM has been completed. It may make sense for us to talk later in the day. I'll let you know when I have enough information to make that productive.

Regards,
Lori

*Lori L. Payne, CPA, CFE, CFF, CIRA*
*Payne Financial Forensics*
*3949 Heritage Oak Court*
*Simi Valley, CA 93063*
*Cell: (818) 414-8324*
*Office: (805) 527-1499*
*Fax: (805) 583-1607*
*Email: LPayne@PayneFF.com*

*Payne Financial Forensics - Where Quality Counts*
Specializing in: *Forensic Accounting, Fraud Investigations*
*Bankruptcy/Insolvency, Litigation Consulting, Expert Testimony*

---

From: Elizabeth.Walker@wellsfargo.com [mailto:Elizabeth.Walker@wellsfargo.com]
Sent: Thursday, July 23, 2009 7:36 AM
To: LPayne@payneff.com
Cc: Cheryl.C.Zimmerman@wellsfargo.com
Subject: RE: List of Approved Payors

We are looking into the documents that we have. Again the NISA is different from the PPM, so the requirements might not be exactly the same.

In any case, we do not have a list of all approved payors. The certificates most likely accompanied the requests for cash. They would be stored in our system with each cash request. So if you look at the PDF's that I sent you for each wire out request, there is supporting data. The Payor would be indicated there.

Elizabeth Walker
612-316-2213

---

From: LPayne@payneff.com [mailto:LPayne@payneff.com]
Sent: Wednesday, July 22, 2009 6:56 PM
To: Walker, Elizabeth (CTS)
Cc: ctmoffitt@ctmoffitt.com; aharvey@ctmoffitt.com; edwardlyons@cox.net
Subject: List of Approved Payors

Elizabeth –

As we discussed on the phone the other day, Medical Capital appears to have been purchasing receivables for which the payors were not insurance companies. According to the Note Issuance and Security Agreement, an "Approved Payor" can be "any for-profit or not-for-profit commercial organization" but such organizations must be "identified in a certificate signed by the Administrator and delivered to the Trustee." I was hoping you'd have a listing of all such

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000058662

"Approved Payors" for which the Trustee has received certificates for MPFCIII, Series 1 and 2 and MPFCV. If so, please forward to me at this email address. In the absence of a list, if you have a file of the certificates that can be easily transmitted electronically, that would do as well. Thanks!

Regards,
Lori

*Lori L. Payne, CPA, CFE, CFF, CIRA*
*Payne Financial Forensics*
*3949 Heritage Oak Court*
*Simi Valley, CA 93063*
*Cell: (818) 414-8324*
*Office: (805) 527-1499*
*Fax: (805) 583-1607*
*Email: LPayne@PayneFF.com*

*Payne Financial Forensics - Where Quality Counts*
Specializing in: Forensic Accounting, Fraud Investigations
Bankruptcy/Insolvency, Litigation Consulting, Expert Testimony

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

WF_MAS_000058663